**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-00454-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Anthony John Pavone - 001<br>Joseph E. DiPrima - 002, | |
| Defendants. | |

Before the Court are Defendants' motions to dismiss counts 3 through 17, which are fully briefed. (Docs. 55, 57, 58, 62, 63.) For the following reasons, the Court will deny the motions.

**I. Background**

On April 23, 2019, the grand jury issued an indictment charging Defendants with one count of wire fraud conspiracy, one count of wire fraud, one count of identity theft conspiracy, seven counts of misuse of personal information with a telemarketing sentencing enhancement, seven counts of aggravated identity theft with a telemarketing sentencing enhancement, and two counts of forfeiture. (Doc. 3 at 2.) The indictment alleges that Defendants operated Hybar Media in Phoenix, Arizona, as lead brokers, purchasing leads[1] from a lead generator, and subsequently selling leads to end-service providers. (*Id.*) It further alleges that from July 2013 through April 2016, Defendants

---
[1] A "lead" usually consists of the contact information or demographic information of a customer who is interested in a specific product or service.

purchased databases of personal identifying information from Supplier-1, which obtained its information from people voluntarily responding to direct mail campaigns. (*Id.* at 3.) Defendants allegedly used this information to create counterfeit hard copy sweepstakes leads,[2] which they then sold for a higher value as authentic hard copy sweepstakes leads[3] to their clients. (*Id.*) On November 4, 2019, Defendants moved to dismiss counts 3-17 of the indictment. (Docs. 55, 57.) The Court held oral argument on the motions on December 12, 2019 (Doc. 68) and took the matter under advisement.

## II. Legal Standard

A defendant may move to dismiss an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). When addressing a motion to dismiss, the Court is required to "accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (citation omitted). "A pretrial motion is generally capable of determination before trial if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (quotation and citation omitted). "Generally, an indictment is sufficient if it sets forth the elements of the charged offense so as to ensure the right of the defendant not to be placed in double jeopardy and to be informed of the

---

[2] The indictment explains,

> These counterfeit hard copy leads contained spaces into which the personal identifying information of the putative respondent—like name and address—was printed. The slips also included blanks onto which the respondent was to handwrite certain additional personal identifying information, such as a phone number, a signature, and/or a notation about whether the respondent had a credit card . . . Depending on the exact template used [Defendants'] employees and associates would add, for example, a phone number, a forged signature, or the initials of the putative respondent.

(Doc. 3 at 4-5.)

[3] Sweepstake leads are generated from mass mailings that advertise potential winnings in lotteries or drawings and notify the recipients that they might have won, or are likely to win, prizes and cash payouts. In order to claim their putative prizes, the recipients are asked to mail in an attached slip of paper, on which the recipients are required to list personal information, such as a name, phone number, and address. These slips of paper are known as "hard copy leads" or "hand write leads."

offense charged." *United States v. Rodriguez*, 360 F. 3d 949, 958 (9th Cir. 2004) (quoting *United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995)).

**III. Discussion**

Defendants contend that dismissal of counts 3-17[4] is appropriate because the indictment fails to allege a crime of identity theft pursuant to 18 U.S.C. § 1028(a)(7). (Docs. 55, 57 at 8.) Under § 1028(a)(7), whoever (1) knowingly transfers, possesses or uses, (2) without lawful authority, (3) a means of identification of another person, (4) with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law shall be punished as provided in subsection (b). Defendants' motions challenge the sufficiency of the allegations in the indictment pertaining to the second and fourth elements. The Court finds that the indictment has sufficiently alleged the elements of the charged offenses to survive a motion to dismiss.

The indictment alleges that Defendants knowingly possessed respondents' information and created counterfeit hard copy sweepstakes leads, which they transferred to purchasing clients, and that the sweepstakes leads contained the names, addresses, and/or forged signatures of individuals—all of which constitute means of identification of another person. (Doc. 3 at 3.) *See U.S. v. Blixt*, 548 F.3d 882, 886-87 (9th Cir. 2008).

Defendants argue that, as a matter of law, the indictment cannot allege that they transferred, possessed, or used the means of identification of another without lawful authority because they had "lawful authority" to sell the information contained in the leads. Particularly, Defendants contend that they could use the information in any manner they choose because the individuals whose information was involved had voluntarily provided data to Supplier-1.[5]

---

[4] Each of these counts concern identity theft. Count 3 of the indictment alleges that Defendants conspired to commit identify theft in violation of 18 U.S.C. §§ 371 and 1028(a)(7). Counts 4-10 contain parallel allegations of identity theft tied to state law crimes. Counts 11-17 allege that Defendants committed aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1), 1028A(b) and 1028A(c)(5) for targeting "10 or more persons over the age of 55."

[5] Defendants correctly assert that there is no applicable law that prohibits brokers from selling data voluntarily provided by consumers.

To the contrary, even if permission to use identifying information is given, "permission to use another's identity in an unlawful scheme is not 'lawful authority' under section 1028A."[6] *United States v. Hong*, 938 F.3d 1040, 1050 (9th Cir. 2019) (citing *Osuna-Alvarez*, 788 F.3d 1183, 1185 (9th Cir. 2015)). *See also U.S. v. Mahmood*, 820 F.3d 177, 187-88 (5th Cir. 2016) (citation omitted) ("[T]he statute plainly criminalizes situations where a defendant gains lawful possession of a person's means of identification but proceeds to use that identification unlawfully and beyond the scope of the permission granted."); *United States v. Morehead*, 676 F. App'x 695, 697 (9th Cir. 2017) ("[E]ven if a defendant obtains the means of identification lawfully, he can still be convicted so long as he *uses* the means of identification unlawfully.").[7] In other words, because the indictment asserts that Defendants possessed and transferred the means of identification in a manner to defraud their clients, the indictment asserts that Defendants did so without lawful authority. *United States v. Musa*, 742 F. App'x 265, 267 (9th Cir. 2018).

Defendants also argue that the indictment fails to state the offense of identity theft because their possession and transfer of the relevant information was not in furtherance of another qualifying crime. (Doc. 55 at 10-11; Doc. 57 at 3.) However, the indictment asserts that Defendants possessed and transferred these forged hard copy sweepstakes leads with the intent to defraud their clients by inducing them to believe that the counterfeit leads were authentic hard copy sweepstake leads. (Doc. 3 at 3.) In other words, Defendants possessed and transferred the pertinent information in connection with their scheme to commit fraud. Fraud is the basis for the various state felonies identified in the indictment. Accordingly, the fourth element has been adequately alleged.

---

[6] "[Section] 1028(a)(7)'s wording is virtually identical to § 1028A[.]" *United States v. Berry*, 369 F. App'x 500, 502 (4th Cir. 2010).

[7] This reading of § 1028(a)(7), which suggests that use of another's identity for an unlawful purpose necessarily entails use without lawful authority, seems to render the "lawful authority" language superfluous. However, the case law (including from the Ninth Circuit) overwhelmingly adopts this interpretation, which the Court is bound to follow. *See U.S. v. Roberts-Rahim*, No. 15-CR-243(DLI), 2015 WL 6438674, at *7 (E.D.N.Y. Oct. 22, 2015) ("[E]very single Court of Appeals that has considered this issue, except for one, has ruled that § 1028A is violated whenever the defendant uses another person's identity in furtherance of one of the enumerated crimes, regardless of whether the other person consented to the use.").

Because the indictment sufficiently alleges the elements of identity theft under § 1028(a)(7).

**IT IS ORDERED** that Defendants' motions to dismiss (Docs. 55, 57) are **DENIED**.

Dated this 30th day of December, 2019.

Douglas L. Rayes
United States District Judge