**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-00454-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Anthony J. Pavone, *et. al.*, | |
| Defendants. | |

Before the Court is Defendant Joseph DiPrima's motion to dismiss counts 3 through 17, joined by Defendant Anthony Pavone, which is fully briefed. (Docs. 111-113, 115.) For the following reasons, the Court will deny the motion.

Defendants operated Hybar Media in Phoenix, Arizona as lead brokers, purchasing leads[1] from a lead generator and subsequently selling leads to end-service providers. (Doc. 3 at 2.) From July 2013 through April 2016, Defendants purchased databases of personal identifying information from Supplier-1, which obtained its information from people voluntarily responding to direct mail campaigns. (*Id.* at 3.) Defendants allegedly used this information to create counterfeit hard copy sweepstakes leads,[2] which they then sold for a

---

[1] A "lead" usually consists of the contact information or demographic information of a customer who is interested in a specific product or service.

[2] The indictment explains,

> These counterfeit hard copy leads contained spaces into which the personal identifying information of the putative respondent—like name and address—was printed. The slips also included blanks onto which the respondent was to

higher value as authentic hard copy sweepstakes leads[3] to their clients.  On April 23, 2019, the grand jury issued an indictment, which brings seventeen counts—one count of wire fraud conspiracy, one count of wire fraud, one count of identity theft conspiracy, seven counts of misuse of personal information with a telemarketing sentencing enhancement, seven counts of aggravating identity theft with a telemarketing sentencing enhancement, and two counts of forfeiture.  (*Id.*)  On November 4, 2019, Defendants brought motions to dismiss counts 3-17 of the indictment for failure to state an offense, (Docs. 55, 57), which the Court denied.  (Doc. 76.)  On June 24, 2020, Mr. DiPrima filed a new motion to dismiss counts 3-17, asserting that dismissal is appropriate because 18 U.S.C. §§ 1028(a)(7) and 1028A(a)(1) are unconstitutionally vague and overbroad.  The Court held oral argument on the motion on July 29, 2020 (Doc. 117) and took the matter under advisement.

A conviction under "a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement" violates a defendant's Fifth Amendment rights.  *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015) (citation omitted); *Kasheem v. Barr*, 941 F.3d 358, 364 (9th Cir. 2019).  However, the "difficulty in determining whether certain . . . offenses are within the meaning of the language [of the statute] under attack as vague does not automatically render a statute unconstitutional for indefiniteness."  *Jordan v. De George*, 341 U.S. 223, 231 (1951).  Rather, the language of a statute must convey "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices" and

> handwrite certain additional personal identifying information, such as a phone number, a signature, and/or a notation about whether the respondent had a credit card . . . Depending on the exact template used [Defendants'] employees and associates would add, for example, a phone number, a forged signature, or the initials of the putative respondent.

(Doc. 3 at 4-5.)

[3] Sweepstake leads are generated from mass mailing that advertise potential winnings in lotteries or drawings and notify the recipients that they may have won, or are likely to win, prizes and cash payouts.  In order to claim their putative prizes, the recipients are asked to mail in an attached slip of paper, on which the recipients are required to list personal information, such as a name, phone number, and address.  These slips of paper are known as "hard copy leads" or "hand write leads."

must "provide law enforcement with adequate guidelines." *Panther v. Hames*, 991 F.2d 576, 578 (9th Cir. 1993) (citation omitted).

>18 U.S.C. § 1028(a)(7), provides,
>
>> Whoever, in a circumstance described in subsection (c) of this section… knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law.

18 U.S.C. § 1028A(a)(1) has nearly identical language but applies to those who commit the offense in relation to specifically enumerated felonies.

Mr. DiPrima first argues the statutes' "without lawful authority" language renders them unconstitutionally vague by thwarting a person of ordinary intelligence's ability to determine whether his conduct is criminalized under the statute.[4] A statute fails to give fair notice of the criminalized conduct only if it is "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Evans*, 883 F.3d 1154, 1160 (9th Cir. 2018) (citation omitted). The Ninth Circuit has held that the text of these statutes, including the "without lawful authority" language, is unambiguous. *Osuna-Alvarez*, 788 F.3d at 1185-86 ("This language clearly and unambiguously encompasses situations like the present, where an individual grants the defendant permission to possess his or her means of identification, but the defendant then proceeds to use the identification unlawfully. [W]e conclude that the statutory text is unambiguous."). A statute cannot be simultaneously unambiguous and so vague as to fail to provide fair notice of the criminalized conduct.

Even if the Court were not to rely on the Ninth Circuit's pronouncement of the

---

[4] DiPrima argues for the second time that, because the individuals whose personal identifying information ("PII") was contained in the leads gave their PII voluntarily, he had the lawful authority under those statutes to possess and transfer the PII in the manner he did. The Court rejected this contention in its prior order, *United States v. Pavone*, No. CR-19-00454-PHX-DLR, 2019 WL 7293406, at *2–3 (D. Ariz. Dec. 30, 2019), and here underscores that these two statutes do not require "actual theft or misappropriation of the means of identification" as an element of the offense. *See United States v. Osuna-Alvarez*, 788 F.3d 1183, 1185 (9th Cir. 2015) ("[D]espite its title, § 1028A does not require theft as an element of the offense.").

statutes' unambiguity, the Court agrees that it "strains credulity to suggest that Defendant could not discern that using someone else's personal information to create forged documents and then selling those forgeries as authentic would be prohibited" under the statutes. (Doc. 112 at 8-9.) Despite Defendant's reminders that individuals volunteered their PII, the Ninth Circuit, time and time again, has made clear that an individual's *permission* to another to do what they wish with their PII does not constitute "lawful authority" to possess, transfer, or use that PII in connection with unlawful activity.[5] *See, e.g.*, *United States v. Gagarin*, 950 F.3d 596, 604 (9th Cir. 2020); *United States v. Hong*, 938 F.3d 1040, 1050 (9th Cir. 2019); *United States v. Morehead*, 676 F. App'x 695, 697 (9th Cir. 2017).

Next, Mr. DiPrima argues that dismissal of counts 3 through 17 is appropriate because criminalizing the transfer, possession, or use of a person's PII where that person volunteered it, but did not authorize the particular *form* in which it was possessed or transferred, is so standardless that it could give rise to discriminatory enforcement. Mr. DiPrima explains, "[c]ommon sense dictates that the Identity Theft statute is not intended to criminalize behavior where Person B had lawful authority to transfer, possess, and use Person A's name and information, *but had no notice that Person A did not intend his or her name and information to be transferred, possessed, or used in a particular form*."[6] (Doc. 111 at 9 (emphasis in original).) In so doing, Mr. DiPrima coaxes form into the limelight and shoves the unlawful activity backstage, even postulating that it is irrelevant

---

[5] Defendant in his reply asserts that this principle is limited to the "use" of PII as opposed to its possession and transfer. No such distinction exists. *United States v. Musa*, 742 F. App'x 265, 267 (9th Cir. 2018).

[6] Defendant relies on *Sheehan* to support his assertion that the statutes might lead to subjective and arbitrary enforcement. *Sheehan v. Gregoire*, 272 F. Supp. 2d 1135, 1148 (W.D. Wash. 2003). In *Sheehan*, the Western District of Washington struck down as unconstitutionally vague a state law criminalizing the publication of law enforcement officials' personal information when the publication was intended to harm or intimidate. The court found the statute could lead to arbitrary enforcement because the "with [] intent to harm or intimidate" language required discerning the subjective intent of the speaker and lacks objective standards. *Id.* at 1149. Unlike in *Sheehan*, Defendant does not allege that law enforcement must look to subjective standards to determine whether a crime might have been committed under the statutes.

that Defendants possessed and transferred the PII in connection with criminal activity. His theories are not founded in law and Mr. DiPrima may not divorce himself from the facts by suggesting that the statute, as applied to him, criminalizes the mere reformatting of information in the absence of fraud or other unlawful activity. The Court therefore finds that dismissal of counts 3 through 17 is inappropriate.

**IT IS ORDERED** that Defendant Joseph DiPrima's motion to dismiss counts 3 through 17, joined by Defendant Anthony Pavone, (Doc. 111) is **DENIED**.

Dated this 31st day of July, 2020.

Douglas L. Rayes
United States District Judge